[Cite as *State v. Smith*, 2020-Ohio-573.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 108415 |
| v. | : | |
| TOMMIE W. SMITH, | : | |
| Defendant-Appellant. | : | |

**JOURNAL ENTRY AND OPINION**

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 20, 2020

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-622983-A

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Brian D. Kraft, Assistant Prosecuting Attorney, *for appellee.*

Jordan Sidoti, L.L.P., and Mary Catherine Corrigan, *for appellant.*

PATRICIA ANN BLACKMON, P.J.:

{¶ 1} Tommie W. Smith appeals from his abduction conviction and assigns the following errors for our review:

I. The trial court improperly instructed the jury as to abduction, a lesser included offense to kidnapping in count five (5) of the indictment.

II. The guilty verdict cannot be upheld because evidence and testi[m]ony presented at trial did not establish appellant's guilt beyond a reasonable doubt.

{¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's judgment. The apposite facts follow.

{¶ 3} In the early morning hours of October 22, 2017, Smith was with L.O. at L.O.'s cousin's house. At one point, Smith pulled out a gun and an argument began. Ultimately, Smith dragged L.O. to his vehicle at gunpoint and drove her back to his house.

{¶ 4} On November 17, 2017, Smith was indicted for rape, two counts of kidnapping, two counts of felonious assault, and aggravated burglary. The indictment contained firearm, notice of prior conviction, repeat violent offender, sexually violent predator, and sexual motivation specifications.

{¶ 5} On February 13, 2019, a jury trial began. The court dismissed the aggravated burglary count and one of the felonious assault charges. Prior to deliberations, the court instructed the jury on the remaining counts of the indictment and abduction as a lesser-included offense to one of the kidnapping charges. On February 21, 2019, the jury found Smith guilty of abduction and not guilty of the remaining charges. On March 27, 2019, the court sentenced Smith to 12 months in prison.

**Abduction Jury Instruction**

{¶ 6} A "defendant may be found not guilty of the [offense] charged but guilty of an inferior degree thereof, or of a lesser included offense." Crim.R. 31(C). *See also* R.C. 2945.74. A "criminal defendant does not have the right to prevent a trial court from giving lesser-included-offense jury instructions; whether to include such jury instructions lies within the discretion of the trial court and depends on whether the evidence presented could reasonably support a jury finding of guilt on a particular charge." *State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.3d 1207, ¶ 1. The Ohio Supreme Court has further held that "[e]ven though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." *State v. Thomas*, 40 Ohio St.3d 213, 216, 533 N.E.2d 286 (1988).

{¶ 7} Abduction is a lesser included offense of kidnapping. *State v. Maurer*, 15 Ohio St.3d 239, 271, 473 N.E.2d 768 (1984). Abduction is defined in R.C. 2905.02, the pertinent parts of which state that "No person, without privilege to do so, shall knowingly * * * [b]y force or threat, remove another from the place where the other person is found * * *." R.C. 2905.02(A)(1). The kidnapping charge at issue alleged a violation of R.C. 2905.01(A)(2), which states that "[n]o person, by force, threat, or deception, * * * shall remove another from the place where the other person is found * * * [t]o facilitate the commission of any felony * * *."

{¶ 8} "One of the primary differences between kidnapping and abduction involves the offender's mental culpability. Kidnapping involves a *purposeful* removal or restraint * * *, while abduction involves a *knowing* removal or restraint * * *." (Emphasis sic.) *Maurer* at 270.

{¶ 9} Smith cites *State v. Bolton*, 8th Dist. Cuyahoga No. 96385, 2012-Ohio-169, to support his argument that the court abused its discretion by instructing the jury on abduction. However, *Bolton* is distinguishable from the case at hand. In *Bolton*, the victim testified as follows about what happened:

> [S]he was in her upstairs bedroom when she heard noises coming from downstairs. When she went into the hallway, she saw a man coming up the stairs. She testified that she did not see the man clearly, but heard him say, "put your head down, turn around." At that point, the man grabbed her and pushed her into her bedroom. [The victim] testified that the man pointed a firearm at her while he pulled off her pants. Subsequently, the man penetrated her with his mouth, fingers, and penis.

{¶ 10} Bolton was convicted of kidnapping, gross sexual imposition, and rape. As indicted, the kidnapping was committed to facilitate the commission of a felony, namely the rape and gross sexual imposition. The jury believed the victim's testimony and convicted Bolton of kidnapping. On appeal, Bolton argued that the trial court erred in refusing to instruct the jury on abduction as a lesser-included offense. However, it is within the court's discretion whether to instruct the jury on a lesser included offense. *Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.3d 1207, at ¶ 1. How the court exercises its discretion depends on the evidence presented at each trial.

{¶ 11} In the case at hand, Smith was indicted for kidnapping with the purpose of raping L.O. If Smith did not intend to rape L.O., then his forcing her into the car and driving off was not kidnapping. Rather, it was abduction. Indeed, were we to find error with the court's instructing the jury on abduction in this case, we would be finding that Smith committed no offense when he forced L.O. into the car against her will and drove off, removing her from the place where she was.

{¶ 12} Upon review, we find no abuse of discretion with the court instructing the jury on abduction as a lesser-included offense of kidnapping. The evidence presented at trial supports a finding of guilt concerning abduction, that is, Smith knowingly and by force removed L.O. from the place where she was, regardless of purpose. Smith was acquitted of rape and kidnapping presumably because the jury did not believe L.O.'s testimony about what occurred after Smith brought L.O. back to his house. Accordingly, Smith's first assigned error is overruled.

**Manifest Weight of the Evidence**

{¶ 13} In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, & 25, the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows:

> The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. *Id.* at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id.* at 386-387, 678 N.E.2d 541. In other words, a

reviewing court asks whose evidence is more persuasive C the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Id.* at 387, 678 N.E.2d 541. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony."

*Id.* at 387, 678 N.E.2d 541, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

{¶ 14} An appellate court may not merely substitute its view for that of the jury, but must find that "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387. Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶ 15} In the instant case, L.O. testified that Smith, whom she had recently met, picked her up "a little after midnight" in the early morning hours of October 22, 2017. L.O. was celebrating her birthday, that was on October 21, and she was celebrating 47 days of sobriety. Smith and L.O. went to a karaoke bar where L.O. relapsed and drank Patron tequila. Smith and L.O. then went to a house where Smith sold someone drugs, then Smith and L.O. went to L.O.'s cousin's house. Around 3:00 a.m., Smith, L.O., and some of her cousins drove to "the bootleg man" to buy alcohol out of his basement. Then they went back to L.O.'s cousin's house where they continued to drink alcohol and smoke marijuana.

**{¶ 16}** Smith and another male kept leaving the house and coming back. L.O. testified that she assumed they were selling drugs. According to L.O., "[t]he last time when he came in, like he came in like — I don't know. I never seen him like that. He was like aggressive and like paranoid and like just weird. * * * And before I know it he was pulling a gun out." L.O. testified that an argument ensued, and the group went outside to the porch.

**{¶ 17}** L.O. testified about what happened next:

Q: And after you're struck, what's the next thing that happens?

A: Go to the car. Grabs my arm and we go to the car and he pulls off and I'm like hanging off of it.

Q: All right. When you say, he grabs your arm and you go to the car, describe that for us.

A: He took me by my arm, yanked me to the car (indicating).

Q: Okay. And I believe you're kind of demonstrating that — what arm does he grab?

A: My bad arm. My left arm.

* * *

Q: So you're grabbed in your left arm. And what is — how is he acting when he grabs your arm like that?

A: He was just walking.

Q: Are you wanting to go with him or not?

A: No.

Q: All right. Why is it that you do go with him?

A: Because he took off with me hanging out of the car.

* * *

Q:     All right.  And when he grabs you by your left arm and starts to pull you to the car do you have your phone with you at that point in time?

A:     No.

Q:     Do you make any effort to get back to the house?

A:     I definitely did.

Q:     And describe those efforts for us.

A:     I said, could you please drop me back off at my cousin's house. Please.  Please.  He said, no.  They're going to jump me or something. And I'm like, jump you.  It's nothing but girls there.  Could you just dropped [sic] me off at the end of the street.  Or just take me back home. My dad don't know nothing.  I said, I don't have my phone or anything. My dad is going to know something is up.  He said, no.  So I shut up.

Q:     Okay.  Well, earlier in your testimony you mentioned something about hanging out of the car; is that correct?

A:     The driver's door.

Q:     Okay.  Describe how that takes place.  Describe it for us.  Paint a picture for us how you're getting dragged.

A:     How do you paint that picture?  It's just so clear.

Q:     All right.  Well, let me ask you this:  You testified earlier that you were led off the porch and he grabbed your left arm?

A:     Right.  So he's sitting in the driver's side.  And when he pulled off my feet were like on the ground.  So like they got off the ground somehow because I guess moving so fast and they were like on the bottom of the car where you step in to get in the car.

Q:     Okay.  Were you placed into the car from the driver's side or the passenger side?

A:     I was like tossed in from the driver's side.

Q:     Okay.  Once you left that location is that when you told him to take you back?

A:      Um-huh.

Q:      All right.  Did he take you back?

A:      No.

Q:      At that point in time where did you go with [Smith]?

A:      To his house.

{¶ 18}   Margaret Sharp testified that she met her cousin L.O. for the first time on October 22, 2017.  It was L.O.'s birthday, and she and Smith were visiting some of L.O.'s family members who were at Sharp's house.  They drank "a little bit" of alcohol, and "they left to go get more alcohol."  Sharp next testified as follows about what occurred when L.O. and Smith got back to Sharp's house:  "The next thing I remember was just my cousin Tanisha screaming and everyone ran outside and kind of seen the back end of the car zooming down the street and my cousin [L.O.] hanging out of the car."  Asked to explain in more detail, Sharp testified that Smith "pulled out of the driveway, and he was zooming down the street. * * * [L.O.] was hanging out the driver's side of the door.  * * * One leg was in and one leg was out."

{¶ 19}   After the parties rested at trial and per the state's request, the court instructed the jury as follows:

> [I]f you find the defendant — you can't make up your minds, * * * you do have the right to consider a lesser included offense, and I provided one for abduction at that point.
>
> * * *
>
> If you find that the state failed to prove beyond a reasonable doubt all of the essential elements of the offense of the kidnapping, then your verdict must be not guilty of that offense.

You will continue your deliberations to decide whether the state has proved beyond a reasonable doubt all of the essential elements of the lesser included offense of abduction.

If all of you are unable to agree on a verdict of guilty or not guilty of kidnapping, you will continue your deliberations to decide whether the state has proved beyond a reasonable doubt all of the essential elements of the lesser included offense of abduction.

The offense of abduction is distinguished from kidnapping by the absence or failure to prove that the defendant abducted [L.O.] for the purpose of facilitating the commission of a felony.

Before you can find the defendant guilty of abduction, you must find beyond a reasonable doubt, that on the 22nd day of October, 2017, in Cuyahoga County, Ohio, the defendant, without privilege to do so, knowingly by force or threat removed [L.O.] from the place where she was found.

* * *

If you find that the state proved beyond a reasonable doubt all of the essential elements of the offense of abduction, your verdict must be guilty.

If you find that the state proved — failed to prove beyond a reasonable doubt any one of the essential elements of the offense of abduction, your verdicts must be not guilty.

{¶ 20} On appeal, Smith argues that "[t]his instruction unduly prejudiced [him], as it gave the jury an out, and an ability to find [him] guilty of *something*, in an effort to appease the State and the victim, and avoid the fact that the State of Ohio failed to produce a single legitimate piece of evidence to support a finding of the primary offense of kidnaping." (Emphasis sic.)

{¶ 21} The state, on the other hand, argues that the abduction jury instruction was proper because "the jury could find that [Smith] removed L.O. from

her cousin's home through force, but not find that [Smith's] removal of L.O. was done with a purpose of committing a felonious assault thereafter."

{¶ 22} Upon review of the evidence in the record, we find that L.O.'s and Sharp's testimony about Smith dragging L.O. by the arm, and at gunpoint, to his car and driving away with L.O. hanging out of the driver's door was consistent and credible. "It was within the province of the jury whether to believe [the witness testimony]. We defer to the jury regarding credibility issues because the jury is able to weigh the evidence and judge the credibility of witnesses by viewing the demeanor, voice inflections, and gestures of the witnesses testifying." *State v. Royal,* 8th Dist. Cuyahoga No. 93903, 2010-Ohio-5235, ¶ 22.

{¶ 23} The jury obviously chose to believe L.O.'s and Sharp's testimony. Additionally, there is no evidence in the record that is inconsistent with this testimony. Simply put, all the evidence at trial supports a conviction for abduction. Accordingly, Smith's second assigned error is overruled.

{¶ 24} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
EILEEN A. GALLAGHER, J., CONCUR